Thank you, your honor. May it please the court. My name is Patrick Sullivan and I'm with the Attorney General's Office and I represent Ms. Worrell. I'd like to start out by addressing the District Court's conclusion that the statute at issue here, Missouri Revised Statute Section 105.711.5, only applies to cover judgments against state employees. And I'd like to point out to the court, this statute was originally enacted in 1983 and it's covered judgments against state employees since that time. The language at issue here in Subsection 5 that expressly bars personal capacity claims was added in 2005 and that was in Senate Bill 420, 93rd General Legislative Session. It's available on Westlaw, but the key point is the statute had already been covering judgments for 22 years before this language was added. Patrick Sullivan Counsel, since you brought up 2005, you got one of my two big questions about this case. You're trying a theory on us that I can't find has been before any Missouri court, not any Missouri appellate court, and best I can do, case net, not any Missouri trial court. Is that true? There's just nothing reported on this? That is true, your honor. I can't find anything either. Yeah, yeah, yeah, right, right. And this statute's been around. Thank you for confirming what I did too, that the merger of all those bills is 2005. And so it's been around for 16 years and you tried out in a federal court first. And so I wonder about that. Now, my next question for you is, if you look at Laughlin versus Perry, the heading, and this is a heading by the court, as you know, heading by the court, back on the last section there, this is page 632, if you're following, keeping score at home. But page 632, the heading is SLEF coverage does not preclude official immunity application. That's the heading on that section. And it looks to me like in these 16 years, the Missouri Supreme Court has. And here, I think they say it fairly clearly. We can do a textual analysis two or three times that says, no, you still get to argue these other points and this point. And I think the Missouri Supreme Court's allowing both of them to proceed. And you want us to take this one, the one sentence. It's one sentence, as you know, counsel, you want to take the one sentence and read it out of context. And so why, oh, why doesn't the Missouri Supreme Court Laughlin versus Perry, the heading and the analysis cover this period? Your Honor, two points in response. The first time I know that this argument being raised was in a Missouri state trial court, but the case didn't work its way up the chain. So there's no published opinion. So then the first time I've raised it, but the state judge didn't even comment much on it. Go ahead. And second, your Honor, Laughlin versus Perry, the argument was that this statute barred use of the official immunity defense. And what the Supreme Court said is no. In section 105.726, the legislature expressly preserved all other available defenses. So the public defenders can assert official immunity. That was the real crux of the dispute there. The public defenders want to do assert official immunity. The plaintiff was saying no, this statute precludes the use of official immunity. But I would point the court to the language on page 632, where the court says, quote, well, it says the purpose of the statute is, quote, protect state employees by limiting the circumstances in which they may be sued and held liable for conduct arising out of and in connection with their official duties. Now, that's immunity language. It's not simply covering judgments. Limiting when they may be sued and held liable for conduct is immunity language. Well, counsel, now Missouri's forever call this official immunity, just the normal doctrine that the courts have just applied for years. Well, your Honor, our position is official immunity is separate from this defense, that this statute provides a separate immunity defense from official immunity. We're not arguing official immunity. Counsel, this is Judge Smith. Is that what you, what, how do you label this immunity then? I call it statutory immunity. That's what I thought you said in the briefing. And below, we did raise official immunity as a separate defense. Well, is there someplace in Missouri law that calls it statutory immunity? I've not found anything, your Honor. I've not found any reported appellate decisions that have addressed this issue at all. And why the argument hasn't been made before, I don't know. Well, I think I know. I think I know the Missouri Supreme Court has a long string of cases in which they just go ahead talking about official immunity the way we've always talked about it. And, you know, there's a long string of cases on this. This is not a, this is not a novel area of law in Missouri. I think it goes back a couple of hundred years, perhaps even all the way back to the beginning. Yes, official immunity does. Yeah. And so, go ahead. Well, I was going to say official immunity does go back quite a number of years, but this language was added in 2005 to the statute for a reason. And the plain language of it says personal capacity claims are barred. Now that's where you're back to where the district court may be right. The rest of that section, if you look at it in context, talks clearly about judgments. And of course, that's what the, as you know, the attorney general has to approve all this stuff for you to even have access to this fund, right? That's still a law in Missouri, correct? Correct. Yeah. And so this is talking about what the state has to end up paying. And so in view of that and putting it in the context of that section, how can you see it as anything other than talking about the judgment? Well, your honor, the statute had covered judgments for 22 years before this language was added. So if the only purpose is to cover judgment, this language is completely... No, no, it wasn't. It was to make sure official immunity was still available, says the Supreme Court and Loffman. Your honor, that would be section 105.726 preserves official immunity. It makes clear that that defense is also available. But this language in 105.711.5 was added in 2005. Do you know when the 726 language was added? Offhand, I... Well... And I don't have it handy either. It was also amended in 2005, your honor. It was originally enacted in... The same time, right? So as you know, we have to construe them together. I just have a big problem with the attorney general's position here, since you so control the fund anyway, as you know. So, but proceed. Proceed. I've made my points. Well, your honor, our position is there are two separate defenses available to state employees, and that it makes sense to read, to interpret it, to give effect to the plain language of this section. It puts state employees in the same position as the state in terms of lawsuits. As the court's aware, the state has sovereign immunity except for limited circumstances, car accidents, injuries on public property, punitive damages are barred against the state. And what the plain language of 105.711.5 does is it puts state employees in the same position, because it doesn't make sense to say, well, that you're limited in all these claims you bring against the state, you can't get punitives, but just go ahead and turn around and sue state employees, unlimited punitive damages, and if you get past official immunity, bring any claims you want. So what the statute... So under your position that this type of claim, someone could say, we'll just take the allegations as true for purposes of this discussion. There's just nothing you can do. The plaintiff has no recourse against this kind of intentional conduct. That would be correct, Your Honor, unless it falls within the category where sovereign immunity is waived for the state, they could bring an official capacity claim against the state employee then. But here... Does that feel right to you? Does that seem right? Well, it puts state employees... I mean, that's what it is for the state. So it makes sense that they would do the same for state employees rather than make it broader, because the legal expense fund is paying the judgments anyway. So it doesn't make sense that they would allow much broader claims against state employee if they're going to be paying for it anyway, when the state's only waived sovereign immunity in limited circumstances. Of course, the state employee can be fired for this kind of stuff. So I think having a judgment against you is more serious than just who pays the money. Correct, Your Honor, but I'm looking at from the standpoint of the legislature, if limiting claims against the state to preserve state funds, it doesn't make sense that then they would allow unlimited claims against state employees, yet those are paid with state funds also. So this puts state employees in the state in the same position. And again, the statute's plain language says that, and statutory interpretation canons are to the plain language of the statute. If there are no other questions, I'll just reserve the rest of my time. All right. Thank you, Mr. Sullivan. Mr. Gardner? May it please the court. My name is Chad Gardner, and I represent Jane Doe in this case. First, I'd like to bring up one of the points that the district court's positioned in this case. They didn't say that this immunity, whether we're going to call it statutory or otherwise, would not actually apply at some point. They just stated that at this point of litigation, and it's important to understand that this motion was filed prior to any answer by the state, any claim that the activities of Ms. Worrell were actually official duties or discretionary acts. This case was pled. Ms. Worrell was sued as an individual. Now, she is a probation officer, and that co-mingles her relationship and those things. But these allegations are of a highly personal and intentional—it was very intended acts. And so when this motion was first filed in the court, as the court is likely to do in a case like this, the facts haven't been developed. Official immunity hadn't been invoked. And actually, until the state entered its appearance, I wasn't even sure that Ms. Worrell was going to be indemnified or represented by the state. All of that takes place here. They filed the motion. And then when reading Laughlin and Perry, which is very fact-dependent, and it should be noted that the Supreme Court, that case was fully developed. Official immunity had been applied, had been evaluated. And the big difference in Laughlin and Perry in this case is the acts that are alleged are wanton and bad faith, if taken as true. And that analysis, as the court in Missouri Supreme Court, this new statute does not absolve all those prior court cases that say there are exceptions. And also, I think it's very instructive that Missouri Supreme Court views this immunity that we're talking about today as official immunity. It's not statutory. It's not immunity, a new immunity, because if it was, then basically what the attorney general's position is, no one has a remedy for anything anymore because— Well, counsel, you know there's always car accidents, there's always condition of property, so don't say that. Yeah, those are sacred grounds for you to sue on. But what do you do if you just take the one sentence here, you know, after the one-two, there's the one sentence, and it politely says the state legal expense fund—now, this is personalizing a fund—how it comes in as Superman and precludes any other civil action for money damages arising out of—if you just read that sentence, you'd think, well, the Supreme Court's been asleep for at least the last 15 years, and the Missouri courts have, the plaintiff's lawyers have, and the attorney general has. Attorney general has to certify every dead, burned one of these. I'm pretty sure that's still the law in Missouri. Or they don't get anything from the legal expense fund, and they've all just been asleep and missed this. And so you read it that way. Why don't you just read it and say, okay, legislature, you're in session. You don't have anything else to do. Legislature, you're in session. Straighten up your language about precluding any civil action. Well, my basis for that is the Supreme Court doesn't view it that way. The only case we have, like, as the courts well aware, this is a unique issue. If everybody's been asleep at the wheel, it's also been the court. And this issue— Okay, what's your proof? What's your proof for that last sentence? The Supreme Court? Yeah, about the Supreme Court. Go ahead. In Loughlin v. Perry, the court's evaluation of this statute, it doesn't—well, I apologize. I withdraw. I'm confusingly conflating the two issues. I believe in my reading of Loughlin of Perry and in my case, is that you don't reach the issue of the attorney generals or this fund until you reach those other issues first. And I think it's clear the court's applying official immunity. And whether or not a statute precludes that, the statute—the case law has been up until—well, at no point have I seen a case where wanting bad act and bad faith and bad malice hasn't been determined to be a viable claim against the fund. But I also think we are here very prematurely because prior, as I noted down below, I wasn't asserting that Ms. Worrell was acting in her capacity. In fact, her acts that we were complaining about, many of them occur outside of her official capacity in a personal and intentional relationship. And I think it's very premature for us to even evaluate this at this point. This may be right for review by the district court once discovery is completed on a motion for summary judgment based on that. I just think at this point, based on the facts that are developed and the law that's out there, it's just premature and inappropriate to make a decision because what that does, in effect, is bars what might be a viable claim just on the chance that this is official acts and a chance it's official doctrine or discretionary acts. And I think the district court was right to—and its decision is very pointed—it said at this time, it's not appropriate. And I just don't—we're not there yet. And I think this court, as it struggles to find any other case of this magnitude or anything addressing this issue, is in the same position. I don't think the case law is developed. And we would be interpreting Missouri law, which at this point, I don't see any direction for the Supreme Court has already upheld throughout this time. I think, in my brief, I think this is a very it's a very simple issue at this time. I think the state wants to have this argument at this time because there's no facts to develop that would counteract or support anything about what the state determines as statutory immunity. And I find it hard to believe that the legislators believe they were creating a separate immunity from a lawsuit that would preclude any kind of action that was already contemplated in the case law and in such situations like that. I think if the legislature's position was what the state, what the attorney general now says, they would have affirmatively stated in their legislation that we're legislating these carve-outs out of the legislation. And without— You didn't raise any issue that if it were interpreted that the state legal expense fund precludes any other civil action, that would give the attorney general power to determine whether something's a civil action or not, whether they certified in the previous sections of this law, correct? You didn't raise that issue at all, did you? I did not raise that issue. Okay, and you didn't raise any Missouri constitutional objections to that. Is that right? That is correct. I am basing this solely on the argument that's before the court that I narrowed this issue and tried to define it specifically as this brought before this court. I am not challenging—as I said, I think the motion was filed inappropriately at this time based on the facts prior to any answer to the lawsuit, prior to any assertion that Ms. Worrell, as it relates to these claims, was asserting any kind of official doctrine defense. Obviously— Let me interrupt you because generally you want the legal expense fund to be there. Generally, as a plaintiff's attorney, we do. Yes, right. Okay, proceed. But the court would also agree there are also strategic tactics in a plaintiff's case when multiple defendants are engaged in a conspiracy or concerted act that those people may be joined in the lawsuit because there are actual claims against them as individuals. It also illustrates the nexus that is necessary to pursue other parties. Obviously, this case was pled that not only was Ms. Worrell a probation officer, she was engaged in personal relationships, and there was communication in there and activities, which obviously, if the allegations are to believe to be true, I don't think the state or anybody would claim that some of these acts would be within the discretion of her official duties. I think this is a very simple issue. We haven't engaged in significant discovery in this case. The state's brought the appeal. I think the district court was correct at this time. I think that the state is well within its bounds to bring the same kind of motion based on fully developed facts. And if, in fact, those facts, as they are developed, support its claim, then I think the court could find for the state. But I just don't think at this time— Gosh, isn't this a legal issue? The statute says the state legal defense fund precludes anything, any action or proceeding that's halfway civil. The state—well, but if that—I believe that the way the court has interpreted is that that doesn't preclude official immunity claims that would be permitted under official immunity doctrine. And so without—if the Supreme Court had determined that this, in fact, was an absolute bar against lawsuits, then these official immunity doctrine cases, all these cases go away. And no case would be filed. For state employees. For state employees only. For state employees. For state employees. And I don't think—first of all, I don't think that's the intention of the legislature. I think the intention of the legislature is to limit these cases to an extreme degree, but not necessarily to bar any recovery or bar any kind of lawsuit, because the civil justice system is there to serve justice. And if the court—if plaintiffs are barred from the courts under all circumstances, even circumstances the court has previously determined are viable claims, then I believe that that's, you know, an overreach of the statute, over-interpretation. And I haven't, as this court will, I haven't found anything to support such a great expansion of the statute or the immunity. And if there are no further questions, I will see the rest of my time. All right. Thank you, Mr. Gardner. Mr. Sullivan, your rebuttal. Thank you, Your Honor. I'd like to refer the court to footnote one on page 16 of our brief. We cite a number of cases from other states that essentially have the same type of immunity that we're arguing for here. For example, Nebraska bars individual capacity claims against state employees. Indiana, Georgia, New Mexico, North Dakota, and some others we cite significantly limit those claims. So the argument's not as out there as it might sound at first blush. Some other states have done exactly what we're arguing for here. Second, I'd like to point out that with an immunity defense, the stage of the proceedings shouldn't matter. If the immunity defense applies, then the lawsuit shouldn't proceed. That's one of the purposes of immunity is to prevent state employees from being dragged through discovery. And here, we contend that it's a pure legal issue, that there's really no facts to be developed in discovery as to this defense. Now, that contrasts with official immunity, which we're not raising before this court. But for here, for this statutory immunity defense, we don't believe there are any factual issues. So it is ripe for decision. If the court has any questions, I'd be happy to answer. Otherwise, I'm through. All right. Don't see any additional questions. Thank you, Mr. Sullivan. Thank you also, Mr. Gardner. The court appreciates counsel's participation in arguments this morning. We'll continue to study the case.